Opinion filed July 22,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00106-CR 

                                                    __________

 

                             ERNEST
FRANCIS SCOTT, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 396th District Court

 

                                                          Tarrant
County, Texas

 

                                                  Trial
Court Cause No. 1126956D

 



 

                                            M
E M O R A N D U M    O P I N I O N

            The
jury convicted Ernest Francis Scott of aggravated robbery with a deadly weapon,
found the enhancement allegation to be true, and assessed his punishment at
confinement for fifteen years.  We modify and affirm.

Issues
on Appeal

            In
two issues, appellant argues that the evidence is legally and factually
insufficient to support the verdict.  Specifically, appellant contends that
there was no conclusive testimony that he committed the offense because the
victim did not initially identify him, because the victim was unsure of the
order in which the events occurred, and because the victim was intoxicated.

Standards
of Review

            In
order to determine if the evidence is legally sufficient, the appellate court
reviews all of the evidence in the light most favorable to the verdict and
determines whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Laster v. State, 275 S.W.3d 512, 517-18
(Tex. Crim. App. 2009); Jackson v. State, 17 S.W.3d 664, 667
(Tex. Crim. App. 2000).  To determine if the evidence is factually sufficient,
the appellate court reviews all of the evidence in a neutral light.  Laster,
275 S.W.3d at 519; Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000);
Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  Then, the reviewing
court determines whether the evidence supporting the verdict is so weak that
the verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence.  Watson,
204 S.W.3d at 414-15; Johnson, 23 S.W.3d at 10-11.

The
appellate court reviews the factfinder’s weighing of the evidence and cannot
substitute its judgment for that of the factfinder.  Cain, 958 S.W.2d at
407; Clewis, 922 S.W.2d at 133.   Due deference must be given to the
factfinder’s determination, particularly concerning the weight and credibility
of the evidence.  Johnson, 23 S.W.3d at 9; Jones v. State, 944
S.W.2d 642 (Tex. Crim. App. 1996).  The jury, as the finder of fact, is the
sole judge of the weight and credibility of the witnesses’ testimony.  Tex. Code
Crim. Proc. Ann. art.
36.13 (Vernon 2007), art. 38.04 (Vernon 1979).  This court has the authority to
disagree with the factfinder’s determination “only when the record clearly
indicates such a step is necessary to arrest the occurrence of a manifest
injustice.”  Johnson, 23 S.W.3d at 9.

Evidence
Presented

            Phillip
Carlson testified that he worked at H & H Distributing making $40 - $50 a
day.  He had “ended up homeless for a short period of time” and was sleeping in
a “little spot” on James Avenue.  While he was sleeping on James Avenue, he met
Cynthia Hardaway.  She lived across the street from his spot and offered to let
him sleep on her couch for $60 a week.

            The
first night he spent on Cynthia’s couch, she asked for $20 and also asked him
to watch her son for about twenty minutes.  When she returned, she had some
crack cocaine in her hand.  Carlson gave her the rest of the rent for the first
week and put his things in the laundry room.  He noticed that she had “some guy”
in the bedroom.  He also noticed her smoking crack.

            Carlson
stated that, while he stayed with Cynthia, she borrowed $40 from him in
addition to the $60 he had given her for rent.  Cynthia told him that she would
take the $40 off his next week’s rent.  He stayed with her less than a week
because they got into an argument when he refused to lend her any more money.  Cynthia
started throwing his clothes out her backdoor, and Carlson grabbed the rest of
his things and went back across the street to his spot.

            He
spread out his bedroll and went to sleep.  Later, he was awakened as two people
walked across the grass toward him.  Appellant “came at” him.  Carlson
testified, “He was already up on top of me by the time I sat up.  He was
already there.  And I didn’t even have a chance to stand up. . . . He was,
boom, right there.”  Carlson described how appellant hit him twice in the head
with a hammer.  After the second blow, Carlson saw the hammer when appellant
dropped his hand.  Appellant then held Carlson down while Cynthia went through
his pockets and removed $20.

            Afterwards,
Cynthia and appellant walked back across the street.  Carlson went to find
someone to call the police.  He was taken to the hospital, and he received
stitches.

            Carlson
testified that he had seen appellant three times before he was attacked:  with
a crack pipe in Cynthia’s bedroom, in her kitchen when she introduced appellant
as “Ernie,” and in the house the night Cynthia kicked him out.  Based on seeing
appellant these times, Carlson identified appellant in open court as the man
who hit him in the head with a hammer and held him down while Cynthia went
through his pockets.

            Carlson
testified that he was an alcoholic but that he did not smoke crack.  While he
had been drinking the night Cynthia kicked him out, he said that he was “[n]ot
completely drunk” when he went to sleep in his spot and that he was not at all
intoxicated when he awoke as Cynthia and appellant approached him.

            Carlson
gave the police Cynthia’s full name.  He told the police that he only knew
appellant as “Ernie.”  Carlson also told the police where they could find both
Cynthia and appellant.  Later, Carlson immediately picked Cynthia out of a
photo lineup but did not immediately pick out appellant.  He was “cautious”
about identifying appellant.  Carlson stated that he had viewed appellant
directly head on and that appellant had his head at a bit of an angle in the
photo.

            Fort
Worth Police Detective John Edward Livesay testified that Carlson was not under
the influence of alcohol when he interviewed him at the hospital.  Detective
Livesay stated that Carlson immediately picked Cynthia out of the photo lineup
but did not immediately pick out appellant.  Carlson asked to see the photo
lineup with appellant’s picture a second time.  Fort Worth Police Officer
Carlos Cespedes testified that, shortly after Carlson was attacked, Cynthia
allowed him into her house to speak to appellant.  When he went inside
Cynthia’s house, he saw appellant on the bed in the back bedroom.  Appellant
did not look like he was sleeping.  Cynthia then denied Officer Cespedes any further
access to search her house.

            Cynthia
was called as a witness by the State.  She stated that she did not want to
testify in this case.  Cynthia denied that she had offered to let Carlson sleep
on her couch.  She stated that she let him sleep one time in her laundry room. 
After that night, he went back to his spot.    Cynthia testified that appellant
had gone with her to Carlson’s spot to get some money that Carlson had stolen
from her.  While she took a hammer, she did not use it.  Instead, she kicked
Carlson to wake him up.  Cynthia stated that Carlson had given her $2 and $5
from time to time and that he then took $80 from her.  She did remember giving
a prior statement in which she stated that she gave the hammer to appellant but
testified at trial that she did not use the hammer and took it back home. 
Cynthia stated that, after she and appellant confronted Carlson, they both went
back to her house and went to bed.  She admitted that she had been smoking
crack “[o]ff and on” during this time.

Analysis

            Carlson
unequivocally indentified appellant in open court as the man who attacked him
with a hammer and held him down while Cynthia took $20 from his pockets.  Carlson
based this identification on the three times he had seen appellant prior to the
attack.  While Carlson admitted to drinking before he went to sleep, there is
no evidence in the record that he was drunk when Cynthia and appellant woke
him.

            As
stated above, the jury was the sole judge of the weight and credibility of the
witnesses’ testimony under Articles 36.13 and 38.04.  As such, the jury was
free to accept or reject any or all of a witness’s testimony.  

After
reviewing all of the evidence in the light most favorable to the verdict, we find
that a rational jury could have found the essential elements of the offense
beyond a reasonable doubt.  Therefore, the evidence is legally sufficient to
support the conviction.  Further, after reviewing all of the evidence in a
neutral light, we find that neither is the evidence supporting the verdict so
weak that the verdict is clearly wrong and manifestly unjust nor is the verdict
against the great weight and preponderance of the conflicting evidence.  The
evidence is factually sufficient to support the conviction.  Both issues are overruled.

Holding

            The
judgment of the trial court is modified to reflect that appellant entered a
plea of true to the enhancement allegation.  As modified, the judgment of the
trial court is affirmed.

 

 

                                                                                    TERRY
McCALL

                                                                                    JUSTICE

 

July 22, 2010

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.